IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY ADDINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-444 |
| ) | |
| ) | Judge Nora Barry Fischer |
| SENIOR VICE PRESIDENT - HUMAN ) | Chief Magistrate Judge Maureen P. Kelly |
| RESOURCES, CONSOL ENERGY ) | |
| INCORPORATED, LIBERTY LIFE ) | |
| ASSURANCE COMPANY OF BOSTON, ) | Re: ECF No. 14 |
| and AMANDA PIPENBACHER, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendants Liberty Life Assurance Company of Boston and Amanda Pipenbacher, ECF No. 14, be granted.

### II. REPORT

#### A. Procedural and Factual Background

Plaintiff Gregory Addington commenced this two-count action by filing a Complaint seeking payment of long term disability benefits pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1), against Senior Vice President - Human Resources, Consol Energy, Incorporated ("Consol") as the administrator of a self-insured long term disability plan and Liberty Life Assurance Company of Boston ("Liberty Life"). Mr. Addington also asserts a state law claim of intentional inducement to breach a contract of confidentiality against Liberty Life and Amanda Pipenbacher, a Liberty Life disability case manager. ECF No. 1. Consol filed an Answer and Affirmative Defenses to the Complaint. ECF

No. 19. Liberty Life and Ms. Pipenbacher filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). ECF No. 14.

Defendant Consol is the designated Plan Administrator for the Consol Energy Inc. Flexible Benefits Program Long Term Disability Plan (the "Plan"). ECF No. 1 ¶ 6. Mr. Addington, a resident of Kentucky, was covered under the Plan as a result of his employment with Consol as an Underground Section Foreman. Id. ¶¶ 5; 12-14. Liberty Life is the designated Claims Administrator for the Plan charged with, in part, determining eligibility benefit claims under the Plan. Id. ¶¶ 7-8. Ms. Pipenbacher was the assigned Liberty Life disability case manager for Mr. Addington's claim for benefits. Id. ¶ 9.

Mr. Addington ceased employment with Consol on January 30, 2012, due to a disability. Id. ¶ 15. He timely applied for disability benefits under the Plan on February 1, 2012. Id. ¶ 17; ECF No. 17 ¶ 4. Mr. Addington was initially approved for short term disability benefits. Id. ¶ 5. After short term benefits were exhausted, Mr. Addington was approved for long term disability benefits beginning on August 3, 2012. ECF No. 1 ¶ 18; ECF No. 17 ¶ 5.

Mr. Addington's benefits were terminated on January 20, 2016, but he successfully appealed the termination and Liberty Life reinstated benefits retroactive to the termination date. ECF No. 1 ¶¶ 20-22. In its August 5, 2016, letter reversing its termination decision, Liberty Life informed Mr. Addington that the claim had been "returned to Amanda Pipenbacher, Disability Claim Case Manager, for continued handling." Id. ¶ 23; ECF No. 1-2.

Sometime after the August 5, 2016, letter, Ms. Pipenbacher requested a medical file review, to include a review of the medical records by an independent physician certified in Physical Medicine and Rehabilitation. ECF No. 1 ¶ 34; ECF No. 17 ¶ 8. Mr. Addington was not informed

2

that his claim was being reviewed and he was not asked to provide any additional information. ECF No. 1 ¶¶ 25-28.

On August 10, 2016, Ms. Pipenbacher electronically requested a medical records review from MES Solutions ("MES"), an affiliate or subsidiary of Medical Evaluation Specialists, Inc., both of which are located in Norwood, Massachusetts. ECF No. 17 ¶ 8; ECF No. 17-4. MES assigned Neil P. Patel, M.D., licensed in, and a resident of, New Jersey, to review Mr. Addington's medical file. ECF No. 1 ¶ 47; ECF No. 17 ¶ 9. Ms. Pipenbacher provided Dr. Patel with Mr. Addington's medical records and an Authorization and Release Information dated November 3, 2014. ECF No. 1 ¶ 47. Ms. Pipenbacher also instructed Dr. Patel to orally contact Mr. Addington's treating physician, Van Breeding, M.D., who at all relevant times was a resident of Kentucky. Id. ¶¶ 46, 48; ECF No. 17 ¶ 9. On August 22, 2016, Dr. Patel had a telephone conversation with Dr. Breeding about Mr. Addington. ECF No. 17 ¶ 9; ECF No. 17-5.

Dr. Patel provided a report to Liberty Life in which he opined that Mr. Addington was not disabled. ECF No. 17-5. Dr. Patel's report included a summarized and incomplete version of Dr. Breeding's supporting opinion that Mr. Addington was disabled. ECF No. 1 ¶¶ 58-60. By letter dated September 7, 2016, Liberty Life again terminated Mr. Addington's benefits. ECF No. 1-3. Mr. Addington timely appealed the termination of his benefits on December 1, 2016. ECF No. 1 ¶ 30. Liberty Life denied the appeal on January 17, 2017, and stated that the decision was final. Id. ¶ 31. Thereafter, he filed the instant Complaint.

In Count One, Mr. Addington seeks payment of disability benefits. In Count Two, he asserts a state law claim, titled as "Inducement to Breach Contract of Confidentiality." Id. ¶¶ 43-60. This claim is essentially an invasion of privacy claim and is supported by the following

3

relevant allegations. Mr. Addington's attorney had advised Liberty Life by letter dated June 2, 2016, that Mr. Addington had revoked all releases previously given to Liberty Life to the extent they allowed verbal communication with third parties about Mr. Addington's claim. Id. ¶ 43. On June 3, 2016, Ms. Pipenbacher acknowledged in writing receipt of the June 2, 2016, letter. Id. ¶ 45. Therefore, Mr. Addington alleges that Liberty Life, through Ms. Pipenbacher, intentionally instructed Dr. Patel to orally communicate with Dr. Breeding without informing him that Mr. Addington's authorization had been partially revoked in order to ultimately induce Dr. Breeding to breach his fiduciary relationship and violate his duty of confidentiality. Id. ¶¶ 53-54.

In the pending Motion to Dismiss, Ms. Pipenbacher moves to dismiss Counts One and Two asserted against her for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] ECF No. 14. Liberty Life and Ms. Pipenbacher move to dismiss the state law claim asserted against them in Count Two for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), arguing that the claim is preempted by ERISA. Id.

### B. Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint or portion of a complaint for lack of personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). In reviewing a motion to dismiss for lack of personal jurisdiction, the court must accept as true all allegations in the complaint. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009); Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007). The court need not limit the scope of its review to the pleadings and instead must consider affidavits and other competent

---

[1] In her Motion to Dismiss, Ms. Pipenbacher was unclear if Count One was asserted against her and thus argued for dismissal of Count One. Mr. Addington, however, confirmed that his ERISA claim for benefits asserted in Count One is not being asserted against Ms. Pipenbacher. ECF No. 23 at 2.

4

evidence submitted by the parties. Patterson by Patterson v. F.B.I., 893 F.2d 595, 603-04 (3d Cir. 1990); Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir. 1984). Once a plaintiff raises a question of personal jurisdiction, the burden is on the plaintiff to establish "either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1993) (citations omitted).

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). "As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a 'plausible' claim for relief, and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein,

5

Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, Federal Practice and Procedure: Civil 2d, § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. The United States Court of Appeals for the Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).

## C.  Analysis

As jurisdiction of the court is raised, the Motion to Dismiss for lack of personal jurisdiction will be addressed first before proceeding to the Motion to Dismiss for failure to state a claim. See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation, 735 F. Supp. 2d 277, 306-307 (W.D. Pa. 2010) (if the court lacks personal jurisdiction over a party it lacks the power to adjudicate the dispute as to a party) (citing Flood v. Braten, 727 F.2d 303, 306 n. 12 (3d Cir. 1984)).

### 1. Lack of Personal Jurisdiction

Amanda Pipenbacher is a resident of Connecticut. She argues that she does not have a sufficient connection to the Commonwealth of Pennsylvania to permit the exercise of personal jurisdiction. A federal court may exercise "personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." Fed. R. Civ. P. 4(e). Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (citation omitted).

Pennsylvania's long-arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over nonresidents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Grand Entertainment Group, Ltd. v. Star Media Sales, 988 F.2d 476, 481 (3d Cir. 1993) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).

Consistent with the requirements of due process, courts must ensure that a nonresident defendant is subjected to personal jurisdiction only where its activities have been purposefully directed at residents of the forum, or otherwise availed themselves of the privilege of conducting activities there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

> The Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quotation marks and citations omitted). Having minimum contacts with another state provides "fair warning" to a defendant that he or she may be subject to suit in that state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation marks and citations omitted).

Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 299-300 (3d Cir. 2008).

Federal courts recognize two forms of personal jurisdiction: general and specific jurisdiction. Id. at 300. General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated and requires a showing that the defendant has had continuous and systematic contacts with the forum state. Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 412-13, 414 & n. 8 & 9 (1984). Mr. Addington argues that the Court has specific jurisdiction over Ms. Pipenbacher. ECF No. 23 at 2-3.

Specific jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Mellon Bank (E.)PSFS, Nat'l Assoc. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). Specific personal jurisdiction comports with due process as long as the defendant has sufficient minimum contacts with the forum state, focusing on "the relationship among the defendant, the forum, and the litigation." Rush v. Savchuk, 444 U.S. 320, 327 (1980) (quoting Shaffer v. Heitner, 433 U.S. 186 (1977)). It has long been recognized that minimum contacts exist where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In other words, when a defendant's conduct is such that she reasonably should have foreseen being haled into court in the forum, the necessary minimum contacts have been shown. World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. Burger King, 471 U.S. at 476.

As noted "[w]hen a defendant contests personal jurisdiction, the burden shifts to the plaintiff to prove its existence." Stillwagon v. Innsbrook Golf & Marina, LLC, Civ. A. No. 11-1338, 2012 WL 501685, at *2 (W.D. Pa. Feb. 14, 2012) (citing Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) and Mellon Bank, 960 F.2d at 1223)). Therefore, Mr. Addington has the "burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." In re Enterprise Rent-A-Car, 735 F. Supp. 2d at 306.

Ms. Pipenbacher argues that Mr. Addington cannot demonstrate that she had minimum contacts with Pennsylvania, and that even if he could, the Court's exercise of personal jurisdiction over her would offend traditional notions of fair play and substantial justice. Ms. Pipenbacher's argument that minimum contacts with Pennsylvania are lacking is straightforward. The undisputed facts show that no conduct occurred within Pennsylvania. While in Connecticut, Ms. Pipenbacher initiated an electronic communication to a company in Massachusetts that selected a New Jersey physician to speak to a Kentucky physician regarding a patient who resides in Kentucky. In opposing the Motion to Dismiss, Mr. Addington focuses on Ms. Pipenbacher's employment status with Liberty Life, arguing that Ms. Pipenbacher "purposefully directed activities in [Pennsylvania] by acting as a fiduciary on behalf of" a Pennsylvania Plan Administrator (Consol) administering a Pennsylvania ERISA Plan. ECF No. 23 at 2.

The Court disagrees. Ms. Pipenbacher is a claims administrator in a non-management, non-supervisory position with Liberty Life who lacks sufficient discretionary authority and whose decisions on claims are subject to review and approval by a manager. ECF No. 25 ¶¶ 5-6. Accordingly, she does not qualify as a "fiduciary" or "administrator" of the Plan.

Assuming that Liberty Life's status as the Claims Administrator is sufficient to qualify Ms. Pipenbacher's conduct as the actions of an administrator under the Plan, specific personal jurisdiction is still lacking due to the "corporate or fiduciary shield doctrine." "The fiduciary or corporate shield doctrine provides that '"[i]ndividuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts."'" Allegheny Valley Bank of Pittsburgh v. Potomac Educational Foundation, Inc., Civ. A. No. 13-818, 2015 WL 1021097, *7 (W.D. Pa. Mar. 9, 2015) (quoting Gentex Corp. v. Abbott, 978 F.

Supp. 2d 391, 402 (M.D. Pa. 2013) (quoting Bowers v. NETI Techs., Inc., 690 F. Supp. 349, 357 (E.D. Pa. 1988))).

The fiduciary shield doctrine is fact-specific to each defendant, and requires a court to examine "the officer's role in the corporate structure, the quality of the officer's forum contacts and the extent and nature of the officer's participation in the alleged tortious conduct." Maleski by Taylor v. DP Realty Tr., 653 A.2d 54, 63 (Pa. Commw. Ct. 1994) (citing Moran v. Metropolitan District Council of Philadelphia, 640 F. Supp. 430 (E.D. Pa. 1986)). "One particularly significant factor is the status of the employee as an officer or director of the corporation in question." Cerciello v. Canale, 563 F. App'x 924, 928 (3d Cir. 2014). Ms. Pipenbacher is not an officer or director of Liberty Life. More significantly, even if she were an officer or director, none of the alleged tortious conduct committed by Ms. Pipenbacher occurred in Pennsylvania. "Where ... a particular defendant has no contact with the forum in the course of the alleged tortious conduct, it cannot be said that he has purposefully directed his activities at the forum so as to warrant the exercise of specific jurisdiction." Allegheny Valley Bank, 2015 WL 1021097, at *8.

The primary reason that this Court concludes that specific personal jurisdiction is lacking is that Mr. Addington's state law claim is not related to, nor does it arise out of, Ms. Pipenbacher's contacts with Pennsylvania. Farino, 960 F.2d at 1221. Focusing on the relationship among Ms. Pipenbacher, Pennsylvania, and the litigation demonstrates that there are not sufficient minimum contacts with Pennsylvania to justify the exercise of specific personal jurisdiction that would comport with due process. Rush, 444 U.S. at 327. Her conduct occurred outside of Pennsylvania, involved activity occurring outside of Pennsylvania, and none of her conduct was directed at activity within Pennsylvania. Accordingly, the Court lacks specific jurisdiction over Ms.

Pipenbacher.

### 2. Failure to State a Claim

Liberty Life and Ms. Pipenbacher move to dismiss Mr. Addington's state law claim for invasion of privacy, arguing that it is preempted by ERISA. As noted, Mr. Addington asserts a state law claim that Ms. Pipenbacher and Liberty Life violated his right to privacy by inducing his treating physician to breach his fiduciary relationship and violate his duty of confidentiality to Mr. Addington. According to the Complaint, this violation occurred through Ms. Pipenbacher instructing Dr. Patel to verbally contact Dr. Breeding to inquire about Mr. Addington's medical condition, even though Ms. Pipenbacher knew that Mr. Addington had revoked permission to verbally contact Dr. Breeding.

ERISA was enacted "to provide a uniform regulatory regime over employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). ERISA promotes this uniformity through section 514(a), which provides in relevant part that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The United States Supreme Court has interpreted the phrase "relate to any employee benefit plan" broadly, to include all state laws that have "a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). "A state law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001) (quoting Shaw, 463 U.S. at 97).

A variant of ERISA preemption is conflict preemption. A claim is conflict preempted "by ERISA if it provides 'a form of ultimate relief in a judicial forum that added to the judicial remedies provided by ERISA,' or stated another way, if it 'duplicates, supplements, or supplants the ERISA

11

civil enforcement remedy.'" Barber v. Unum Life Ins. Co. of Am., 383 F.3d 134, 140 (3d Cir. 2004) (quoting Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 379 (2002) and Aetna Health v. Davila, 542 U.S. 200, 201 (2004) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54-56 (1987))).

Mr. Addington asserts a state common law claim of invasion of privacy. Generally, state law claims such as common law fraud, misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and insurance bad faith claims are preempted by ERISA. See Menkes v. Prudential Ins. Co. of Am., 762 F.3d 285, 294 (3d Cir. 2014) ("State common law claims . . . routinely fall within the ambit of § 514"); Barber, 383 F.3d at 144 (Pennsylvania's bad faith statute expressly preempted by ERISA). In addition, common law contract and tort claims are generally also preempted by ERISA section 514(a) when claim "relate to" an employee benefit plan. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62 (1987) (citing Pilot Life, 481 U.S. 41)).

Liberty Life and Ms. Pipenbacher argue that the state law claim here is preempted by ERISA Section 514(a) because it is related to Mr. Addington's claim for benefits under the Plan. It is related, they argue, because the invasion of privacy claim is based on conduct occurring during the course of the administrative review process of Mr. Addington's claim for benefits under the Plan. Specifically, the claim concerns Ms. Pipenbacher retaining an independent consulting physician and directing him to contact Mr. Addington's treating physician to gather medical information about Mr. Addington to be used to prepare a report for review of Mr. Addington's continued eligibility for benefits. There are no allegations that Liberty Life disseminated or disclosed the information it received from Dr. Breeding (through Dr. Patel) to anyone outside the

12

administrative review process. The moving Defendants also point to Mr. Addington's jurisdictional allegation in the Complaint as an acknowledgment that his claim is related to the ERISA claim for benefits. See ECF No. 1 ¶ 3 (supplemental jurisdiction over state law claim is present because it is "so related to the ERISA claim for benefits that the Plaintiff's denial of disability benefits is part of the same case or controversy"). Finally, Defendants argue that the state law claim would also be conflict preempted because the only injury alleged by Mr. Addington as a result of the invasion of his privacy is the effect that the divulged information, or a limited portion of the information, may have had on the decision to deny him benefits.

In his response in opposition, Mr. Addington directs the Court to Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 984 (9th Cir. 2001), in which the United States Court of Appeals for the Ninth Circuit rejected the notion that the mere fact that conduct occurs during the review process is sufficient to warrant preemption without further examination and held that an invasion of privacy claim was not preempted by ERISA. ECF No. 23 at 4 (citing Dishman, 269 F.3d at 984). In Dishman, the plaintiff claimed that the insurance company, UNUM, was vicariously liable for a tortious invasion of privacy committed by investigators retained by UNUM. Dishman, 269 F.3d at 979. Specifically, Dishman alleged that the investigators sought to obtain information about him by "falsely claiming to be a bank loan officer endeavoring to verify information he had supplied;" "elicited personal information about him from neighbors and acquaintances by representing that he had volunteered to coach a basketball team;" impersonated Dishman to obtain personal credit card information and travel itineraries; "falsely identified themselves when caught photographing his residence; and that investigators repeatedly called his residence and either hung up or else dunned the person answering for information about him." Id. at 979-80.

13

The Dishman Court rejected UNUM's preemption argument that "but for the plan's relationship of insurer and insured, UNUM would have had no need to investigate Dishman's claim of disability." Id. at 983. Acknowledging that "[o]bviously, at some level Dishman's tort claim relates to the plan," the Ninth Circuit Court of Appeals nonetheless concluded as follows:

> The fact that the conduct at issue allegedly occurred "in the course of UNUM's administration of the plan" does not create a relationship sufficient to warrant preemption. If that were the case, a plan administrator could "investigate" a claim in all manner of tortious ways with impunity.

Id. at 984. Under the facts alleged by Dishman, the Court found that the alleged tortious conduct did "not depend on or derive from his claim for benefits in any meaningful way." Id. at 983 (the "damages for invasion of privacy remain whether or not UNUM ultimately pays his claim.") In reaching this conclusion, the Court stated that it was "certain that the objective of Congress in crafting Section 1144(a) was not to provide ERISA administrators with blanket immunity from garden variety torts which only peripherally impact daily plan administration." Id.

Mr. Addington supports his argument with several District Court decisions from the Ninth Circuit that similarly found that state claims alleging a violation of privacy were not preempted by ERISA. ECF No. 23 at 4-5 (citing Rose v. HealthComp, Inc., Civ. A. No. 15-00619-SAB, 2015 WL 4730173 (E.D. Cal. Aug. 10, 2015); Wickens v. Blue Cross of California, Inc., Civ. A. No. 15-834-GPC JMA, 2015 WL 4255129 (S.D. Cal. July 14, 2015); Bryant v. Aetna Health of California Inc., Civ. A. No. 08-08542DDPPLAX, 2009 WL 1303356 (C.D. Cal. May 8, 2009); Duran v. Cisco Systems, Inc., Civ. A. No. 083337CAS(JTLX), 2008 WL 4793486 (C.D. Cal. Oct. 27, 2008); and Ray v. Value Behavioral Health, Inc., 967 F. Supp. 417 (D. Nev. 1997). He concludes that preemption of his state law claim is not warranted in this case as it would stand on its own regardless of whether his benefits claim was denied or granted.

14

In their Reply Brief, the moving Defendants point out a distinction between the cases cited by Mr. Addington and the present case: the cases where ERISA preemption was not found involved claims based on factual circumstances attenuated from the administration of the Plan. ECF No. 24 at 4. As noted, in Dishman, the investigators engaged in fraudulent conduct in order to unlawfully obtain information about the claimant. Other cases cited by Mr. Addington similarly involved the dissemination of private information to a third party, the failure to protect private information, or the use of private information for purposes other than benefits determination. Rose, 2015 WL 4730173 (nurse case manager working for Plan Administrator provided medical information to plaintiff's employer who subsequently fired her); Wickens, 2015 WL 4255129 (failure to secure personal information by defendant health care company); Bryant, 2009 WL 1303356 (defendant divulged plaintiff's address to ex-spouse who was subject to a restraining order); Duran, 2008 WL 4793486 (defendant allowed third party to gain access to plaintiff's private information); and Ray, 967 F. Supp. 417 (health care provider assigned by Plan Administrator to assist plaintiff engaged in series of tortious acts towards plaintiff in the course of relationship). The Court's independent research discovered case law in which courts similarly declined to find privacy claims preempted due to conduct far removed from the administration of

the ERISA plan.[2]

In support of their preemption argument the moving Defendants cite a case from the United States Court of Appeals for the Fourth Circuit that dealt with ERISA preemption of an invasion of privacy claim. ECF No. 15 at 15 (citing Darcangelo v. Verizon Comm., Inc., 292 F.3d 181 (4th Cir. 2002)). Darcangelo is instructive in that the Court also based its preemption decision on whether the alleged invasion of privacy occurred as part of, rather than in addition to, the administrative review process in.

In Darcangelo, the court found the invasion of privacy claim was not preempted where plaintiff alleged that the administrator of a disability benefits acting on behalf of her employer, Verizon, "solicited her private medical information for the sole purpose of helping Verizon establish that she posed a sufficient threat to her coworkers to warrant her discharge." Darcangelo, 292 F.3d at 188. The Fourth Circuit rejected defendants' argument that the claim arose out of the provision or administration of services to plaintiff and instead found that plaintiff alleged conduct "completely unrelated to [the plan administrator's] duties under the plan." Id. at 194. Conversely, the Darcangelo Court opined that if the plan administrator had obtained plaintiff's medical information "in the course of processing a benefits claim or in the course of performing *any* of its

---

[2] Erlandson v. Liberty Life Assur. Co. of Boston, 320 F. Supp. 2d 501, 508 (N.D. Tex. 2004) (no preemption for claims where during course of claim investigation alleged tortious conduct was that Administrator hired agents to threaten and intimidate plaintiff at her home and doctor's office); Heldt v. Guardian Life Ins. Co. of Am., Civ. A. No. 16-00885-BAS-NLS, 2017 WL 980181, at *6-7 (S.D. Cal. Mar. 13, 2017) (no preemption for invasion of privacy claim based on independent legal duty and where plaintiff is not seeking benefits or damages resulting from an adverse benefits determination); Quintana v. Lightner, 818 F. Supp. 2d 964, 970-72 (N.D. Tex. 2011) (no preemption for claim that defendants violated plaintiff's privacy rights by communicating about medical information without authorization and not authorized by Plan); and Montour v. Hartford Life & Accident Ins. Co., Civ. A. No. 07-5215 DSF (RZX), 2007 WL 9657702, at *3 (C.D. Cal. Oct. 1, 2007) (no preemption for invasion of privacy claim based on allegation of conducting video surveillance of plaintiff at plaintiff's home as claim arose from an unreasonable investigation).

16

administrative duties under the plan," the claim for invasion of privacy would be related to the ERISA plan and would be preempted. Id. at 188 (emphasis in original).

Viewing Mr. Addington's allegations in the light most favorable to Mr. Addington, the Court concludes that Defendants are entitled to dismissal of his state law claim. Mr. Addington alleges that *during the course of an administrative review* of his medical condition, Ms. Pipenbacher instructed Dr. Patel to engage in an oral conversation with Dr. Breeding, even though she knew that Mr. Addington had revoked authorization for verbal contact. Dr. Breeding did speak to Dr. Patel and offered information about Mr. Addington's medical condition, without Mr. Addington's authorization. Mr. Addington alleges that due to the unauthorized disclosure Dr. Patel only included a summary of Dr. Breeding's supportive medical opinion in his written report, and that summary was incomplete. ECF No. 1 ¶ 58. He specifically alleges he was damaged by Dr. Patel's incomplete summary because had Dr. Breeding's full supportive opinion been included in Dr. Patel's report then "Dr. Patel's summary rejection of Dr. Breeding's opinion, without explanation, would have been more jarring that it is in its current form" Id. ¶ 59; and "Liberty's decision to deny Plaintiff's claim in reliance on Dr. Patel's opinion would have been demonstrably more arbitrary and capricious that it was based on the current record" Id. ¶ 60.

The Court concludes that Mr. Addington alleges that the damage he suffered as a result of the unauthorized disclosure is directly related to the decision to deny him benefits. He does not sue Liberty Life and Ms. Pipenbacher for any identified damages based on their conduct in violating his right to privacy that is separate from "damages directly caused by the denial of benefits." Prudential Ins. Co. of Am. v. Doe, 46 F. Supp. 2d 925, 935 (E.D. Mo. 1999). The allegations of this claim therefore are a direct complaint about the administrative decision to deny

17

benefits and "relate to" the ERISA plan. Accordingly, the Court concludes that, as pled, Mr. Addington's state law claim is preempted by ERISA.

The Court recognizes that it is possible that Mr. Addington could plead facts to support a state law claim that would not be preempted by ERISA. In other words, had the Plan Administrator conducted the administrative review process and determined that Mr. Addington's benefits would continue, Mr. Addington's claim against Liberty Life and Ms. Pipenbacher for invasion of privacy may still have a basis in fact and law that does not "relate to" the Plan. For example, a claim may survive preemption that is supported by allegations that the information obtained verbally from Dr. Breeding was insufficiently protected, used in a nefarious manner or disclosed to parties outside the administrative review process, or the claim may rest on other facts disconnected from the administrative review process. See Darcangelo, 292 F.3d at 193 (state claim preempted where allegations were that defendants "did *not* obtain [private] information in pursuit of a legitimate or appropriate end," and defendant's conduct was alleged to be "entirely unrelated to and outside of the scope of their duties under the plan or in carrying out the terms of the plan"). Accordingly, because "a district court must permit a curative amendment, unless an amendment would be inequitable or futile" it is recommended that dismissal of Mr. Addington's state law claim be without prejudice and that he be granted leave to amend. Phillips, 515 F.3d at 236.

### D. Conclusion

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss filed by Defendants Liberty Life Assurance Company of Boston and Amanda Pipenbacher, ECF No. 14, be granted as follows.

18

1. It is recommended that the claims asserted against Amanda Pipenbacher be dismissed with prejudice because the Court lacks personal jurisdiction over her, and that Ms. Pipenbacher be dismissed as a Defendant in this case.

2. It is recommended that the state law claim against Liberty Life asserted in Count Two be dismissed without prejudice for failure to state a claim upon which relief can be granted as the claim is preempted by ERISA. It is further recommended that Plaintiff be granted leave to amend the complaint to reassert this claim to the extent that he can cure this deficiency.

In accordance with the Magistrate Judges act, 28 U.S.C. § 636(b)(1), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

BY THE COURT:

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: November 28, 2017

cc: All counsel of record via CM-ECF